[Civ. No. 16339. First Dist., Div. One. June 20, 1955.]

ROBERT L. ROSA, Appellant, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Respondent.

Rettig & Dunn for Appellant.

Robert H. Gerdes and William S. Love for Respondent.

PATTERSON, J. pro tem.*—Plaintiff appeals from a judgment of nonsuit in an action to recover for personal injuries. At the time of the collision which forms the basis of this action the plaintiff was traveling north on Sansome Street in San Francisco. He was operating a three-wheel parcel carrier motorcycle which is 5 or 6 feet in length. As he approached the intersection of Sacramento Street he observed a truck owned by the defendant, Pacific Gas and Electric Company, which was parked on Sacramento Street at right angles to the easterly curb and within the southerly painted crosswalk of Sacramento Street. The truck was 20 feet long and extended approximately to the middle of Sansome Street. Plaintiff slowed down to 5 to 10 miles per hour as he passed the front of the truck and entered the intersection. When he was 5 feet into the intersection he observed a taxicab traveling westerly on Sacramento Street. At that time the cab had not entered the intersection and was approximately 6 feet from the extended easterly curb line of Sansome Street. The cab was traveling from 20 to 25 miles per hour. The plaintiff could have stopped within 2 to 10 feet. However, he concluded it was safe to proceed and that the cab would slow down and let him through. Then he looked away, and when he arrived at a point three-fourths of the way across the intersection, he again looked at the cab which was 10 feet from him and had not slowed down. The plaintiff accelerated his speed and at a point approximately 21 feet from where he first observed the cab the right front bumper of the cab struck the rear of the motorcycle. At the time of the impact the cab was still traveling at least 20 to 25 miles per hour and had traveled 25 feet from the point where the plaintiff first observed it. The plaintiff received personal injuries. The owner of the taxicab, who was joined as a defendant, paid the plaintiff the sum of $1,750 in consideration for a covenant not to sue. The action proceeded against the defendant Pacific Gas and Electric Company alone. Plaintiff claims that negligent parking of defendant's truck was a proximate cause of the injuries sustained. At the conclusion of the plaintiff's case the court granted a nonsuit on the grounds that there was no causal connection between the parking of the defendant's truck and the collision. The only evidence offered

*Assigned by Chairman of Judicial Council.

by the plaintiff as to the cause of the accident was his own testimony.

We are of the opinion that, under the state of the evidence, the defendant's truck, as urged by plaintiff, was negligently parked in violation of section 586 of the California Vehicle Code which prohibits parking in a crosswalk and section 588 which requires parallel parking. Defendant pleaded as an affirmative defense, and here contends, that it was exempted from the parking restrictions by the provision of section 592.1 of the Vehicle Code. This section provides that these restrictions shall not apply to a vehicle owned or operated by a public utility "when such vehicle is stopped, standing or parked at the site of work involving the construction, operation, removal or repair of such utility or public utility property or facilities upon, in, over, under or adjacent to a street or highway." To bring a defendant within the provisions of this section it must be shown that the vehicle at the time of the accident was employed in one of the activities enumerated in the section. It is an affirmative defense which must be specially proven. (*Isaacs* v. *City & County of San Francisco*, 73 Cal.App.2d 621, 624, 625 [167 P.2d 221].) The purpose for which the truck was parked is not disclosed by the record. Defendant cannot therefore claim any exemption from the parking restrictions.

 This brings us to the question of proximate cause. Ordinarily proximate cause is a question of fact. However, when the facts are undisputed and only one conclusion may be drawn from them, it becomes one of law. (*Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 316 [282 P.2d 12]; *Card* v. *Boms*, 210 Cal. 200, 202 [291 P. 190]; *Traylen* v. *Citraro*, 112 Cal.App. 172, 175 [297 P. 649].) The plaintiff observed the truck. He slowed down and entered the intersection at a low speed. When he had passed the defendant's truck and was 5 feet into the intersection he first observed the taxicab which had not as yet entered the intersection. He testified that he could have stopped within 2 to 10 feet. He observed the position and speed of the cab and determined it was safe to proceed. Having entered the intersection first the plaintiff had the right of way (Veh. Code, § 550, subd. (a)). He had the right to assume that the taxicab would slow down and yield the right of way as he proceeded through the intersection. The rule is stated in *Couchman* v. *Snelling*, 111 Cal.App. 192, 195, 196 [295 P. 845], as follows: "Where a car has actually entered an intersection before the

other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. (*Keyes* v. *Hawley*, 100 Cal.App. 53, 60 [279 P. 674].)''

█ Clearly the plaintiff's determination at this point to proceed rather than slow down or stop was not influenced by the position of the defendant's truck.

The final question which presents itself is whether the position of the truck influenced the conduct of the driver of the cab. He was not called as a witness. The plaintiff has cited a number of cases which were decided on conflicting testimony. The factual situations in these cases are distinguishable from the present one, and it would serve no purpose to analyze them. The diagram introduced by plaintiff indicated that buildings which extended to the sidewalk were located on all four corners of the intersection. The cab was approaching an obstructed·intersection as defined by Vehicle Code, section 511, regardless of the presence of the defendant's truck. That section provides, in effect, that as the cab driver, during the last 100 feet of his approach to the intersection, did not have a clear and unobstructed view for a distance of 100 feet of the street upon which plaintiff was driving, the cab driver was required to reduce his speed to 15 miles per hour. The intersection was obstructed both by the buildings and the truck. The double obstruction required additional caution to that required by section 511.

Under section 670, Vehicle Code, the cab driver, driving as he was required to do under section 511, could have stopped in 20.8 feet. Assuming that the first time the cab driver could have observed plaintiff was when the plaintiff first observed the cab, namely, 25 feet from the point of impact, the cab driver, had he been obeying the law as he was required to, could have avoided the accident. Moreover, this computation fails to include another vital element, that is, that it was the duty of the cab driver not only to enter the intersection at not over 15 miles per hour, but also to assume before entering that a car might enter from alongside the truck before he entered the intersection, and hence he must be on the lookout for such car.

The driver either did not observe the plaintiff who was plainly visible or having observed him decided that he could

proceed safely without slowing down and yielding the right of way as required by law. At that point his view of the plaintiff's vehicle was not obstructed in any way by the defendant's truck. It was his duty to slow down and yield the right of way to the plaintiff who had entered the intersection. Instead he traveled at an unabated speed. The right front of the cab struck the rear of the plaintiff's vehicle. If the cab driver had lessened his speed to any appreciable extent the collision would not have occurred. His failure to do so was the sole proximate cause of the plaintiff's injuries. It was the result of a deliberate choice unaffected at the time by the position of the defendant's truck. The failure to yield the right of way is not attributable to the defendant.

The judgment is affirmed.

Bray, J., concurred.

PETERS, P. J.—I dissent.

The facts are fully, fairly and accurately set forth in the majority opinion. From these facts the majority correctly conclude that, for purposes of nonsuit, the evidence shows that the defendant Pacific Gas and Electric Company was negligent, and that plaintiff was not guilty of contributory negligence. But the majority also conclude that the evidence shows, as a matter of law, that the negligence of the cab driver was the sole proximate cause of the accident, that is, was an intervening cause that broke the chain of causation. It is with this conclusion that I disagree.

This is an appeal from a judgment of nonsuit. Such a judgment is proper when, and only when, the appellate court can say, after resolving all conflicts in the evidence in favor of the plaintiff, and after indulging in all reasonable inferences from that evidence in favor of the plaintiff, that there is no evidence or no reasonable inference from that evidence that would support a verdict for the plaintiff. It is this fundamental rule that I believe has been violated by the majority.

We are dealing with a question of proximate cause. All of us are agreed that the evidence shows that the taxicab driver was guilty of negligence that was *a* proximate cause of the accident. The majority hold that such negligence, as a matter of law, was not only "a" proximate cause of the

accident, but was "the sole" proximate cause. Normally, this is a question of fact and not of law.

The majority are wrong if, under any reasonable interpretation of the evidence, there is an inference that the negligence of defendant in unlawfully parking its truck at the corner of the intersection at right angles to the curb *could have contributed in any degree* to the · accident. In other words, the problem is not whether the negligence of the taxicab driver was *a* proximate cause of the accident, but whether there is any reasonable interpretation of the evidence that would support the inference that the negligence of the defendant company concurred *in any degree* with that of the cab driver to cause the accident.

For present purposes we may assume, as the majority assume, that plaintiff's own evidence demonstrates that the accident was not caused by the obstruction of *plaintiff's* view by the truck. The real problem of causation is whether the obstruction, in any degree, could have contributed to the accident by causing the cab driver to proceed into the intersection in violation of plaintiff's right-of-way. If it is a reasonable inference from the evidence that the view of the taxicab driver may have been wholly or partially obstructed by defendant's truck, then we have a case where the jury could have found that the negligent parking of the truck was a contributing factor to the accident. It is my view that the evidence, reasonably, can be so interpreted.

Unfortunately, the taxicab driver was not called as ˙a witness, so we do not know from his testimony whether or not his view was partially obstructed by the truck. But we do have other evidence from which this fact can reasonably be inferred. Plaintiff testified that he first saw the cab after he had proceeded around the truck and had got 5 feet into the intersection. At that moment the cab was 25 feet from the point of impact, traveling 20 to 25 miles per hour. It certainly is a reasonable inference that this was the first time the cab driver could have observed plaintiff, because the testimonial evidence and the exhibits indicate that the cab driver's view was obscured to the same extent as plaintiff's. Section 670 of the Vehicle Code fixes 37 feet as the proper distance a vehicle traveling at 20 miles an hour should be brought to a stop if its braking equipment is operating correctly. The same section fixes 58 feet as the stopping distance for a vehicle traveling 25 miles per hour. Thirty-seven feet is 12 feet, while 58 feet is 33 feet, beyond the

point of impact, which occurred 25 feet after the plaintiff, and inferentially the taxi driver, first observed each other. Looking at the exhibits it can readily be ascertained that, had the truck not been negligently parked, both plaintiff and the taxicab driver could have seen each other a very appreciable distance before they did so. Had the cab driver seen plaintiff many feet before he did we cannot say, as a matter of law, that he would not have slowed down so as to have avoided the accident. While the taxi driver was undoubtedly driving too fast through an obstructed intersection, and should have yielded the right-of-way to plaintiff, it cannot be said, as a matter of law, that the cab driver's conduct should not have been anticipated by the negligent defendant, or that the defendant's negligence did not concur with that of the cab driver to cause the accident. While the most reasonable explanation of the accident is that it was caused by the negligence of the cab driver, it cannot be said that such intervening negligence, as a matter of law, broke the chain of causation. Thus, the case is one in which the jury could have found concurrent negligence. This being so, in my opinion, the judgment of nonsuit should be reversed.

A petition for a rehearing was denied July 20, 1955. Peters, P. J., was of the opinion that the petition should be granted.

Appellant's petition for a hearing by the Supreme Court was denied August 17, 1955. Carter, J., was of the opinion that the petition should be granted.